# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00125-CR

**Apparajan Ganesan, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 0995324, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

A jury convicted appellant Apparajan Ganesan on two counts of solicitation to commit murder. *See* Tex. Penal Code Ann. §§ 15.03, 19.02 (West 1994). The jury found that appellant solicited Reda Sue Prier to kill Sudha Vallabhaneni, appellant's wife, and Amy Wright, the lawyer representing Vallabhaneni in her divorce action. The jury assessed punishment for each count at imprisonment for ten years, to be served concurrently. We will affirm the conviction on one count, but reverse and render an acquittal on the other.

### SUFFICIENCY OF EVIDENCE

*Proof of Solicitation*

In his first issue, appellant contends the State did not prove that he engaged in criminal solicitation as defined in the penal code and alleged in the indictment. The penal code provides that a person commits an offense if, with intent that a capital or first degree felony be

committed, he "requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission." *Id*. § 15.03(a). The two counts of the indictment alleged that appellant, with the requisite intent, requested Prier "to engage in specific conduct, to wit: to kill [the complainant]" under circumstances that "would have made Reda Sue Prier a party to the commission of murder." It is undisputed that appellant did not ask Prier to kill either Vallabhaneni or Wright. Instead, Prier testified that appellant repeatedly asked her to find someone to kill them. Appellant contends that Prier's testimony does not reflect a criminal solicitation, but merely a noncriminal "solicitation of solicitation."

In *Johnson v. State*, 650 S.W.2d 784, 787 (Tex. Crim. App. 1983), the indictment alleged that the defendant "attempted to induce Roger Bryant to employ another" to commit a murder. The defendant argued that asking Bryant to employ another to commit murder was a solicitation of a solicitation, and therefore not an offense under the terms of penal code section 15.05. *See* Tex. Penal Code Ann. § 15.05 (West 1994) (solicitation of a chapter 15 preparatory offense is not an offense). The court rejected this argument. Citing the last phrase in section 15.03(a), the court noted that the act solicited must either constitute the intended felony or make the person solicited a party to its commission. *Johnson*, 650 S.W.2d at 787. The act solicited by the defendant, Bryant's employment of another to commit murder, would make Bryant a party to the murder. Thus, the defendant's solicitation of Bryant constituted an offense under section 15.03. *Id*.

2

If, in the cause before us, Prier had arranged for someone else to kill appellant's wife and her attorney as she testified that appellant requested and attempted to induce her to do, Prier would have been a party to the murders. *See* Tex. Penal Code Ann. § 7.02(a)(2) (West 1994). Appellant's contention that Prier's testimony does not show that he committed a criminal solicitation under section 15.03 is without merit. Issue one is overruled.[1]

### *Corroboration of Solicitee*

Appellant further contends that Prier's testimony was not adequately corroborated. A person may not be convicted of criminal solicitation on the uncorroborated testimony of the person allegedly solicited and "unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation." Tex. Penal Code Ann. § 15.03(b) (West 1994). Section 15.03(b) is analogous to the accomplice witness statute, and the same test for evaluating the sufficiency of the corroboration is used. *Richardson v. State*, 700 S.W.2d 591, 594 (Tex. Crim. App. 1985); *see also* Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). Therefore, we must eliminate Prier's testimony from consideration and determine whether there is other evidence tending to connect appellant to the

---

[1] Although appellant does not brief this issue, we also conclude that there is no fatal variance between the indictment and the evidence. The indictment alleged that appellant asked Prier "to engage in specific conduct, to wit: to kill" Vallabhaneni and Wright, under circumstances that "would have made Reda Sue Prier a party to the commission of murder." Appellant did not object to the form or substance of the indictment. *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West Supp. 2001). An indictment need not allege the facts which make a party criminally responsible for the conduct of another. *Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978). Although there is no evidence that appellant solicited Prier to kill Vallabhaneni and Wright, there is evidence that he solicited Prier to arrange for the murders, which would have made Prier a party as alleged.

crime. *Richardson*, 700 S.W.2d at 594. The corroboration must go to both the solicitation and the alleged intent, but need not be sufficient in itself to establish guilt. *Id*. We view the corroborating evidence in the light most favorable to the verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994); *Utsey v. State*, 921 S.W.2d 451, 453 (Tex. App.–Texarkana 1996, pet. ref'd).

Appellant is an engineer who had designed a computer chip that he hoped to market in partnership with a Swiss corporation. In November 1996, one month after Vallabhaneni filed for divorce, appellant liquidated his brokerage account and ordered that the proceeds, over one million dollars, be wired to a Swiss bank account. Before the money could be moved, however, his wife obtained a restraining order and the money was deposited in the registry of the court. In late 1997 or early 1998, appellant filed for bankruptcy. Vallabhaneni, as a claimant to the funds, was scheduled to be deposed in the bankruptcy proceeding in November 1998. The alleged solicitations for the murders of Vallabhaneni and Wright took place in September and October 1998.

The record reflects that appellant believed that his wife's actions were damaging his ability to market the computer chip. During a telephone conversation with Vallabhaneni in January 1997, which she tape recorded on Wright's advice, appellant said that her divorce action was "making sure that this product will die." Appellant went on, "Let me tell you this. I don't care what you do. If this product dies, one of us will be dead, yeah, I promise you that." Vallabhaneni replied, "What do you mean, you'll kill me?" Appellant answered, "I will kill myself or I'll kill you or I'll kill both of us or you will kill yourself. That much I can tell you. If . . .

4

this product dies, one of us will die. I know that. Because I won't be able to live with the shame. Maybe you will be able to live with it."

In *Richardson*, the defendant was convicted of soliciting the murder of a man who was scheduled to testify against him in a prosecution for theft. The court of criminal appeals stated that the "theft charge and [the victim's] actions with respect to it suggest[] the existence of an agreement [between the defendant and the alleged solicitee]." *Id*. at 595. Applying the reasoning of *Richardson*, appellant's belief that his wife's litigation threatened to derail a potentially lucrative business opportunity was evidence of motive that tends to support Prier's testimony that appellant solicited the murders of his wife and her attorney. While evidence of motive is insufficient in itself to corroborate an accomplice, it may be considered with other evidence to connect the accused with the crime. *Reed v. State*, 744 S.W.2d 112, 127 (Tex. Crim. App. 1988).

Appellant's statement that "one of us will be dead" if the chip design did not succeed adds some additional support to the existence of the solicitation of Vallabhaneni's murder. In his brief, appellant dismisses his remarks during the telephone conversation as nothing more than hyperbole, and notes that the conversation took place twenty months before the alleged solicitation. But viewing the evidence in the light most favorable to the jury's verdict, as we must, we cannot disregard the threat implicit in appellant's statement.

Appellant was arrested in May 1997 for violating a protective order obtained by Vallabhaneni. While in the Travis County Jail, he met James Hammonds, who was awaiting his release on bail following an arrest for theft. Hammonds testified that appellant told him "about

5

how his wife and the system and the judge had destroyed his life and his business and how he was losing everything." According to Hammonds, appellant asked, "Do you know of anyone, or can you take care of my wife for me?" When Hammonds replied, "Excuse me?" appellant said, "You know what I mean." Hammonds said that this "really scared me" and that he thought he was "being set up by the cops." Hammonds refused to give appellant his address but gave appellant a telephone number where he could be reached, not expecting appellant to call.

A few weeks later, however, appellant called Hammonds and asked if he "remember[ed] the conversation in the cell that we had." Appellant added, "I need to talk to you about this again. We need to talk about this." Still fearing that he was being tricked, Hammonds told appellant his upcoming trial date and suggested that they meet at the courthouse. After giving the matter further consideration, Hammonds contacted the police and reported what appellant had said. Subsequently, under the supervision of a Texas Ranger, Hammonds (who had obtained appellant's telephone number by means of caller ID) called appellant while being recorded. When Hammonds attempted to talk about their previous conversations, appellant "started back-peddling. He started trying to get out of the conversation. He didn't want to talk about that." The call ended and the police did not pursue the matter to Hammonds's knowledge.

That appellant solicited Hammonds to kill his wife, albeit sixteen months before the alleged solicitation of Prier, tends to corroborate Prier's testimony both as to the solicitation itself and appellant's intent that Prier act on the solicitation. *See Varvaro v. State*, 772 S.W.2d 140, 143-44 (Tex. App.–Tyler 1988, pet. ref'd). But Hammonds's testimony corroborates Prier only

6

with respect to the solicitation of Vallabhaneni's murder. It does not tend to connect appellant to the alleged solicitation of Wright's murder.

Prier testified that during the months appellant was asking her to arrange the murders, he instructed her to go to a post office near the Arboretum shopping center and watch who came and went. She also testified that appellant told her to watch an office on Lake Austin Boulevard, which he identified as Wright's husband's law office. The State contends this testimony was corroborated by Vallabhaneni's testimony that she received her mail at the Arboretum post office and by Wright's testimony that her husband's law office was in a building on Lake Austin Boulevard. Standing alone, however, this alleged corroborative evidence does not connect appellant to the criminal solicitations. Vallabhaneni's and Wright's testimony is meaningless except by reference to Prier's testimony. Such "bootstrapping" cannot be used to corroborate an accomplice, and by extension cannot be used to corroborate a solicitee. *See Sonenschein v. State*, 722 S.W.2d 450, 452 (Tex. App.–Austin 1987, pet. ref'd).

The State also contends that Prier's testimony was corroborated by appellant's bankruptcy attorney. This witness testified that in November 1998, following appellant's arrest for the instant offense and at appellant's direction, he retrieved over $100,000 in cash from appellant's house. The State argues that this shows appellant had the financial means to pay for the solicited murders and to flee if necessary. But once again, this evidence has little significance standing alone. Appellant's possession of a large sum of cash is inculpatory, if at all, only when it is considered in light of Prier's testimony regarding the alleged solicitations. We must disregard

Prier's testimony in our search for corroborating evidence. *Richardson*, 700 S.W.2d at 594; *Sonenschein*, 722 S.W.2d at 452.

Finally, the State asks this Court to consider evidence tendered by the State but excluded by the district court. The State cites no pertinent authority that would permit this Court to consider excluded testimony in determining the sufficiency of the evidence to sustain a criminal conviction, and we decline to do so. The State did not file a cross-appeal and the propriety of the district court's ruling is not before us. *See* Tex. Code Crim. Proc. Ann. art. 44.01(c) (West Supp. 2001).

We conclude that the evidence of motive, the veiled threat during the telephone conversation, and the earlier solicitation of Hammonds adequately corroborates Prier's testimony both as to appellant's solicitation of Vallabhaneni's murder and appellant's intent that Prier act on the solicitation. We find, however, insufficient corroboration for Prier's testimony regarding appellant's solicitation of Wright's murder. Therefore, we will overrule issue two in part and sustain it in part, reverse appellant's conviction on count one of the indictment, and render a judgment of acquittal on that count.

## OTHER ISSUES

### *Extraneous Offense*

Appellant contends Hammonds's testimony was erroneously admitted over his rule 403 objection because the court failed to perform the necessary balancing test to determine whether the probative value of the testimony was outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative

8

evidence.  *See* Tex. R. Evid. 403.  Appellant does not argue that the court reached the wrong conclusion after applying the test.  Instead, appellant argues that the court failed to apply the proper balancing test at all.

The State first tendered Hammonds's testimony outside the jury's presence.  As part of its presentation, the State submitted a memorandum, in the record as court's exhibit one, summarizing the holdings of several opinions, including the leading case on the subject of extraneous misconduct evidence, *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. Crim. App. 1991) (op. on reh'g).  In its discussion of *Montgomery*, this memorandum set out the factors the trial court is to consider when balancing probative value against the danger of unfair prejudice pursuant to rule 403:  (1) the probative value of the extraneous misconduct evidence with regard to a fact of consequence in the case; (2) the potential for the challenged evidence to impress the jury in some irrational but indelible way; (3) the time needed to develop the extraneous misconduct evidence; and (4) the proponent's need for the evidence.  *See id.* at 389-90.  The prosecutor discussed each of these factors with the court and counsel for appellant responded.  The court then heard Hammonds's testimony without the jury.  Then, after further argument by the parties, the court overruled appellant's rule 404(b) and 403 objections.  *See* Tex. R. Evid. 404(b).

At this point, defense counsel asked the court to "perform a [rule 403] balancing test."  The court replied, "I did, but I'll go ahead and do it again for you.  The Court does find that the probative value outweighs the prejudicial effect in view of all the factors that are ─have been presented in this case."  Counsel pursued the matter, asking the court to expressly address

9

the four factors discussed in *Montgomery*. When asked by counsel to make a finding "with regard to impressing the jury in a potentially irrational manner," the court responded, "Okay. As far as the potential of this evidence to impress the jury in an irrational manner, the Court is not going to make a finding in that regard because I think it's presumptuous to assess —my job is not to be the fact finder in this case. That's the jury's job. So I'll not make that finding."

Appellant's contention is that the court failed to consider the potential for Hammonds's testimony to impress the jury in some irrational but indelible way. The record is to the contrary. This issue was expressly addressed in the State's trial memorandum and discussed by the prosecutor during his argument in favor of admission. The court expressly stated that it had performed the rule 403 balancing test and found that "the probative value outweighs the prejudicial effect in view of all the factors that . . . have been presented." Although the court refused to make an express finding on the issue, *Montgomery* does not require a trial court to conduct the rule 403 balancing test on the record or to expressly articulate the reasons for its ruling.[2] *Caballero v. State*, 919 S.W.2d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Houston v. State*, 832 S.W.2d 180, 184 (Tex. App.—Waco 1992), *pet. dism'd, improvidently granted*, 846 S.W.2d 848 (Tex. Crim. App. 1993). Issue three is overruled.[3]

---

[2] It appears that appellant's request for an express finding was misunderstood by the court to be a request for the court to determine the probative value of the proffered evidence.

[3] Were the issue raised, we would rule that the district court did not abuse its discretion by overruling appellant's objection to Hammonds's testimony. Prier's credibility was the principal issue at trial, both factually and legally. Hammonds's testimony was crucial to the State; without it, it is unlikely that Prier's testimony regarding the solicitation of Vallabhaneni's murder would have been adequately corroborated. Hammonds's testimony did not have the potential for influencing the jury in some irrational way, since it was directly related to the statutory corroboration issue.

*Jury Instruction*

Appellant contends the court erred by refusing to instruct the jury on the renunciation defense. It is an affirmative defense to prosecution for criminal solicitation that the defendant countermanded his solicitation under circumstances manifesting a voluntary and complete renunciation of his criminal objective. Tex. Penal Code Ann. § 15.04(b) (West 1994). Appellant urges that Hammonds's testimony that appellant "started back-peddling" during their last telephone conversation raised the renunciation defense.

Appellant's trial request was that the court give the renunciation instruction "with regard to the extraneous offense," that is, with regard to the solicitation of Hammonds. But appellant was on trial for soliciting Prier. Hammonds's testimony did not raise an issue as to whether appellant countermanded his solicitation of Prier. Issue five is overruled.

*Jury Argument*

Prosecutor Amy Casner concluded her opening argument at the guilt stage by saying that the police and prosecutors had done all they could, that the jury was the "last link in the chain," and that "the evidence tells you he's guilty." She then added, "And if you acquit that man, you are signing those two women's death warrants." Appellant objected that this was an "improper and inflammatory argument that has nothing to do with the rendition of the evidence." The objection was overruled and the prosecutor repeated, "Ladies and gentlemen, you will be signing the death warrants of those two young women if you acquit this man because the evidence

11

tells you he's guilty." Appellant requested a "running objection," which was granted, and Casner's argument ended.

Prosecutor Bill Mange returned to this theme is his closing argument at the guilt stage: "Well, in this case they have tried to put Amy Wright on trial. They have tried to put Reda Sue Prier on trial. . . . This trial is about . . . Apparajan Ganesan, who is trying to kill these two women, and if he walks away with a not guilty, they are dead. Count on it." Appellant objected that this was an "inflammatory statement . . . that's meant entirely to inflame the jury . . . ." The court did not rule on the objection, but admonished the prosecutor to "refrain from —you've already have that said once —from the inflammatory statements." After further argument, however, Mange concluded by saying, "I have said all I have to say. Lives are depending on you. All I ask is that you look at the evidence and do the right thing. The evidence is all there is." Appellant objected, "That is totally improper argument. Lives are depending on this, there's no evidence that that's the truth." This objection was sustained and the jury was instructed to disregard. Appellant's motion for mistrial was overruled.

In order to preserve error regarding the State's jury argument, a defendant must object to the argument and pursue the objection to an adverse ruling. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Under *Cockrell*, appellant failed to preserve any error with regard to Mange's "they are dead" argument.

As has often been said, proper jury argument is limited to: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; and (4) a plea for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim.

12

App. 1996); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). Appellant argues that the complained-of arguments "invited the jury to speculate on matters outside the record" and were "calculated to have a prejudicial effect" on him. The State responds that the challenged arguments were reasonable deductions from the evidence and legitimate pleas for law enforcement. The State reminds us that "a prosecutor may strike hard blows but not foul ones." *Harris v. State*, 996 S.W.2d 232, 237 (Tex. App. Houston [14th Dist.] 1999, no pet.).

Evidence that appellant had twice solicited his wife's murder, and had on the second occasion also solicited the murder of her attorney, reasonably supports an argument that appellant would again solicit the murders if given the chance. The prosecutors could legitimately urge the jury to convict appellant both to punish his past criminal conduct and to prevent such misconduct in the future. The prosecutors exceeded the scope of proper jury argument, however, by telling the jurors that they would be condemning two women to death if they were to find appellant not guilty. Such an inflammatory assertion cannot be characterized as a mere deduction from the evidence or plea for law enforcement.

The court sustained appellant's objection to Mange's statement that lives depended on the jury returning a guilty verdict and instructed the jury to disregard it. In most cases, such an instruction will cure jury argument error. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). While the efficacy of the court's instruction may have been reduced by the court having permitted Casner's earlier, more inflammatory remarks to go uncorrected, we conclude that the court's instruction was sufficient to cure the error in Mange's argument.

13

Casner's argument presents a more difficult question. Not only was her "death warrant" remark more extreme than Mange's, the court erroneously overruled appellant's objection and permitted the remark to be repeated. Not every improper jury argument requires reversal, however. *McKay v. State*, 707 S.W.2d 23, 38 (Tex. Crim. App. 1985). Reversible error is presented when jury argument: (1) violates a mandatory statute; (2) injects new and harmful facts into the case; or (3) is manifestly improper, harmful, and prejudicial to the rights of the accused. *Wilson*, 938 S.W.2d at 59; *McKay*, 707 S.W.2d at 38. Casner's remark did not violate a mandatory statute or inject new facts into the case. While the question is a close one, we conclude that Casner's argument was not so manifestly improper or prejudicial under the circumstances as to warrant reversal. Issue four is overruled.

The district court prepared separate judgments on each count of the indictment. We reverse the judgment of conviction on count one and render a judgment of acquittal. The judgment of conviction on count two is affirmed.

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Powers[*]

Affirmed in Part; Reversed and Rendered in Part

Filed: February 28, 2001

Publish

14

*	Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).