# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00219-CR

**Manuel Caudillo Ramirez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-04-393, HONORABLE RONALD G. CARR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Manuel Caudillo Ramirez guilty of two counts of aggravated robbery with a deadly weapon, for which it imposed two forty-year prison terms to run concurrently and a $10,000 fine. *See* Tex. Pen. Code Ann. § 29.03 (West 2003). Appellant raises six issues on appeal, contending that the trial court erred by: (1) overruling a challenge for cause to one member of the venire panel on the basis that the panelist indicated an inability to apply the correct rule of law; (2) admitting certain hearsay testimony in violation of his confrontation rights under the Sixth Amendment of the United States Constitution; (3) admitting evidence of an extraneous convenience store robbery; (4) admitting evidence that he solicited a former cell mate to murder the victims of the charged offense before trial; (5) admitting evidence of his attempts to fabricate an alibi; and (6) admitting evidence of his membership in the Mexican Mafia. We affirm.

In the early morning hours of April 14, 2004, M.M. and her daughter, T.M., were asleep in their apartment in San Marcos, Texas. M.M. testified that around 3:00 a.m., she heard someone knock on the door to her apartment and "jiggle" the doorknob. Believing it was a family member, M.M. unlocked the door without checking the peephole. M.M. testified that three Hispanic men forced their way through the door and entered her apartment. They were armed with a gun and a night stick. The intruders searched the apartment for money and drugs and demanded money. M.M. gave them ninety dollars from her wallet. M.M. testified that all three of the intruders held the gun at some point during the robbery. She also testified that appellant asked her "who [she] paid her ten percent to," referring to a protection tax a gang known as the Mexican Mafia demands from drug dealers.

M.M. testified that she recognized appellant because he had been in her apartment a few weeks earlier. T.M. also testified that she recognized appellant as well as a second intruder, Henry Ramirez,[1] and that she knew them both by name. Neither T.M. nor M.M. recognized the third intruder later identified as Augustine Villarreal.

At some point during the robbery, T.M. escaped through a window in the living room and ran toward a neighbor's apartment. She testified that appellant followed her out the window and threw the night stick at her, striking her on the thigh. Henry, still inside the apartment, hit M.M. in the face with a DVD player. As Henry and Augustine Villarreal were leaving through the front door, M.M. managed to call 911 on her speaker phone.

---

[1] Henry Ramirez is not related to appellant, Manuel Ramirez. To avoid confusion, we will refer to Henry Ramirez as "Henry" and Manuel Ramirez as "Appellant."

When Officer Paul Beller of the San Marcos Police Department arrived at the scene, he observed that M.M. had an injury to the left side of her face. He testified that he also noticed the strong odor of burnt marijuana inside the apartment. Beller interviewed M.M. and T.M., took pictures of M.M.'s injuries, and collected the DVD player as evidence. When Beller left the scene, he stopped five suspects in a car several blocks away. Three of the suspects were detained and two of them fled on foot. Police brought M.M. and T.M. to the scene and they identified two of the detained suspects, Henry and Villarreal, as two of the three men who had robbed them. Having met appellant prior to the robbery, both M.M. and T.M. confirmed his identity for the police with a photographic lineup.

Appellant was arrested on April 22, 2004, in Geronimo, Texas. Following his arrest, he gave a videotaped statement to the police. During the interview, appellant denied involvement in the robbery at M.M.'s apartment, claiming that he was at his girlfriend's home in Geronimo at the time. The police then questioned appellant about his involvement in a convenience store robbery that occurred approximately one hour before the charged offense in San Marcos, Texas. They also questioned him about his membership in the Mexican Mafia.

On May 13, 2004, appellant was indicted on two counts of aggravated robbery with a deadly weapon under Texas Penal Code section 29.03. Appellant pleaded not guilty to both counts. The matter was tried to a jury beginning April 4, 2005. Throughout trial, appellant's defensive theory was that M.M. and T.M. lied to the police about his presence at their apartment during the robbery. Appellant did not testify or call any witnesses. The jury charge mirrored the

3

indictment and allowed the jury to find appellant guilty "either acting alone or with Henry Ramirez or Augustine Villarreal as a party to the offense." The jury returned guilty verdicts on both counts of aggravated robbery with a deadly weapon and assessed punishment at forty years in prison and a fine of $10,000.

In his first issue, appellant contends that the trial court erred by overruling his challenge for cause to one member of the venire panel. We review a trial court's ruling on a challenge for cause with "considerable deference" because the trial court is in the best position to evaluate the veniremember's demeanor and responses. *Blue v. State*, 125 S.W.3d 491, 497 (Tex. Crim. App. 2003) (citing *Colburn v. State*, 966 S.W.2d 511, 517 (Tex.Crim.App. 1998)). We will reverse a trial court's ruling on a challenge for cause "only if a clear abuse of discretion is evident." *Id.* If a venireman vacillated or equivocated with respect to his ability to follow the law, the appellate court must defer to the trial court's judgment. *Ladd v. State*, 3 S.W.3d 547, 559 (Tex. Crim. App. 1999) (citing *Brown v. State*, 913 S.W.2d 577, 580 (Tex.Crim.App. 1996)).

Appellant claims that during voir dire, venire panelist Lam demonstrated that she could not follow the law applicable to the case because she believed that an accused is required to present evidence establishing his innocence. Consequently, according to appellant, Ms. Lam would not apply the appropriate burden of proof. Appellant relies on the following exchange between defense counsel and Ms. Lam:

[Defense Counsel]: What do you think my job is?

Ms. Lam: To prove he's innocent.

4

The record also shows that when defense counsel asked whether anyone thought appellant was guilty because the State had "a telephone book full of witnesses," Ms. Lam acknowledged that it looked like an "uphill battle" for the defense. She also stated that she would have difficulty deciding the case fairly if the defense did not put on any evidence.

The defense may challenge a potential juror for cause if that juror has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely. *See* Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (West Supp. 2005). However, a potential juror's initial disagreement with any phase of the law relevant to a case does not require excusing the veniremember for cause when further examination of the veniremember shows a misapprehension of the law or confusion on the part of the juror. *See Harkey v. State*, 785 S.W.2d 876, 880 (Tex. App.—Austin 1990, no pet.) (citing *Cockrum v. State*, 758 S.W.2d 577, 586 (Tex. Crim. App. 1988)).

In this case, defense counsel did not explain the presumption of innocence to the jurors until after the comments were made by Ms. Lam. As a result, when Ms. Lam was brought to the bench for further questions, she stated that she had "spoken off the top of her head" and "in no way meant to accuse [appellant] of being guilty." Ms. Lam indicated that she understood the law applicable to the case and that she agreed to find appellant "not guilty" if the State's evidence did not prove every element of its case. Additionally, once it was explained to Ms. Lam that she would have to make her decision based on the evidence available, whether from one side or both sides, she acknowledged, "I can only go on the evidence that's given." On this record, we conclude that once

5

the court explained the law to Ms. Lam, she understood and agreed to apply the appropriate burden of proof to this case. Therefore, the trial court did not abuse its discretion in overruling appellant's challenge to Ms. Lam for cause.

In his second issue, appellant contends that the trial court erred in admitting testimony by Detective Marin concerning out-of-court statements made to Marin by appellant's juvenile accomplice, Henry, who did not testify at trial. Appellant alleges that this hearsay testimony violated his right of confrontation under the Sixth Amendment of the United States Constitution.

In all criminal prosecutions, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted with the witnesses against him." U.S. Const. amend. VI; *Shuffield v. State*, 189 S.W.3d 782, 790 (Tex. Crim. App. 2006) (citing *Pointer v. Texas,* 380 U.S. 400 (1965) (applying the Confrontation Clause to the states via the 14th Amendment)). The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *See Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999). The United States Supreme Court has held that testimonial statements of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine. *Crawford v. Washington,* 541 U.S. 36, 59 (2004). Although the Supreme Court declined to spell out a comprehensive definition of what constitutes "testimonial" evidence, it stated that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury,

6

or at a former trial; and to police interrogations."[2] *Id.* at 68. In deciding the constitutional issue of whether the admission of a statement of another violates a defendant's Sixth Amendment right to confrontation, an appellate court reviews the trial court's ruling de novo. *See Muttoni v. State*, 25 S.W.3d 300, 304 (Tex. App.—Austin 2000, no pet.) (citing *Lilly*, 527 U.S. at 136-37).

In this case, the defense cross-examined Detective Marin concerning out-of-court statements made by Henry to the police. The record shows that the purpose of the cross-examination was to show that Henry was not initially honest with the police concerning his involvement in the charged offense:

| [Defense Counsel]: | The juvenile, are you aware of how many statements the juvenile gave? |
|---|---|
| Marin | I believe it's two. I'm not sure. |
| . . . . | |
| [Defense Counsel]: | So, he wasn't being honest? |
| Marin: | At some points in his statement; yes, sir, he wasn't being honest. |
| . . . . | |
| [Defense Counsel]: | And at some point he was denying ever being there; isn't that true? |
| Marin: | Yes, sir. I believe at the beginning of his story he said that he stayed inside the vehicle at the time of the robbery. |

---

[2] It is undisputed that the out-of-court statements at issue in this case were "testimonial" statements. They were made by Henry during a police interrogation. *See Crawford v. Washington,* 541 U.S. 36, 68 (2004).

Next, the defense questioned Detective Marin about certain out-of-court statements made by Henry and used by the police to obtain a search warrant for Villarreal's house. The purpose of these questions was also to suggest that Henry may have lied to the police:

> [Defense Counsel]: So, as far as what really occurred in the apartment, what you have are, I guess [Henry] saying certain things happened. A juvenile who is, who could go to prison for these types of crimes; is that correct?
>
> Marin: Yes, sir. I would imagine so.
>
> . . . .
>
> [Defense Counsel]: And if somebody wanted to look good in the eyes of law enforcement in the hopes of favorable treatment could say, "Well, these things y'all will find at so-and-so's house," even if those aren't, in fact, the weapons that were used?
>
> Marin: Is that your question: Could Henry Ramirez be lying to me?
>
> [Defense Counsel]: Yes.

On re-direct, the prosecutor adduced testimony that rebutted the theory that Henry was an unreliable informant by showing that Henry eventually confessed to his involvement in the charged offense. Specifically, Detective Marin testified that Henry told the police, *inter alia*, that he, appellant, and Villarreal were together on the evening of the charged offense, that the group went to a convenience store and stole some beer, that appellant threatened to kill the convenience store clerk if he reported the offense, that the group obtained weapons from Villarreal's home, that he, appellant, and Villarreal committed the charged offense for the purpose of collecting Mexican Mafia protection tax money, and that the group returned the weapons to Villarreal's home. The trial court admitted these

8

out-of-court statements on the basis that appellant had "opened the door" to this evidence during cross-examination.

Otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered opens the door, provided the party offering the evidence does not stray beyond the scope of the invitation. *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997). In this case, when defense counsel cross-examined Detective Marin regarding Henry's out-of-court statements to the police, he intended to show the jury that Henry was an unreliable informant. This line of questioning opened the door for the prosecution to introduce further testimony from Detective Marin to clarify that it was reasonable for the police to rely on Henry's statements because his eventual confession was consistent with other corroborating evidence. However, while the defense may have opened the door to further testimony demonstrating Henry's reliability as a witness, the court allowed the State to "stray beyond the scope of the invitation" by eliciting testimony from Detective Marin concerning the details of appellant's participation in the charged offense. The admission of this testimony informed the jury of the details of Henry's statements in such a way that incriminated appellant without giving appellant an opportunity to confront and cross-examine the declarant. Under these circumstances, the appellant's confrontation rights were arguably violated. *See Shuffield,* 189 S.W.3d at 791; *McClenton v. State,* 167 S.W.3d 86, 94 (Tex. App.—Waco 2005, no pet.). However, even if admission of portions of Henry's out-of-court statements could be viewed as error, we are required to conduct a harmless error analysis. On this record, regardless of whether admission of portions of Henry's statements was erroneous, the harmless error analysis is dispositive.

9

Under the rules of appellate procedure, we must reverse the conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a). In determining harm from Confrontation Clause error, we are to apply the factors enunciated in *Delaware v. Van Arsdall*. *See Delaware v. Van Arsdall,* 475 U.S. 673 (1986). The *Van Arsdall* factors are the importance of the witness's testimony; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting material points of the witness's testimony; the extent cross-examination was permitted; and the overall strength of the State's case. *See id.* at 684. In making this determination, we do not focus on the propriety of the trial's outcome but on calculating, as nearly as possible, the probable impact of the error on the jury in light of the other evidence. *Westbrook v. State,* 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). If, without the erroneously admitted evidence, the record contains adequate evidence of guilt, then the error is harmless beyond a reasonable doubt. *Mendez v. State*, 56 S.W.3d 880, 893 (Tex. App.—Austin 2001, pet. ref'd), *cert. denied*, 126 S. Ct. 553 (2005).

Here, Detective Marin's testimony about Henry's statements was largely cumulative of properly admitted evidence proving appellant's involvement in the charged offense—aggravated robbery with a deadly weapon. A person commits a robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, that person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Pen. Code Ann. § 29.02 (West 2003). A person commits a theft if that person unlawfully appropriates property with intent to deprive the owner of that property. *Id.* § 31.03 (West Supp. 2005). An aggravated robbery occurs if, while committing a robbery, a person uses or exhibits a deadly weapon. *Id.* § 29.03 (a)(2).

10

The record includes eyewitness testimony from M.M. and T.M. that appellant entered their apartment without consent, was armed with a deadly weapon, and stole money from M.M. Both M.M. and T.M. testified that they recognized appellant from having met him previously. The police testified that M.M. and T.M. identified appellant in a photo line-up following the charged offense. The jury watched appellant's videotaped statement during which he confirmed that he had met M.M. and T.M. previously and that he had been to their apartment before "to smoke dope." The jury also heard four recorded phone calls made by appellant from jail to his girlfriend in which he criticized her for "snitching" on him to the police. During their recorded conversations, appellant's girlfriend admitted to appellant that she told the police that he was at M.M.'s apartment at the time of the charged offense. Appellant repeatedly states "I told you to tell them I was with you" and "I told you what to say," to which his girlfriend responds, "You were the one there." Additionally, the record contains other evidence of appellant's involvement in the convenience store robbery and in the Mexican Mafia, including appellant's videotaped statement in which he makes several statements concerning the convenience store robbery, an actual video of the convenience store robbery, and a letter to appellant in prison confirming his membership in the Mexican Mafia.[3] Lastly, the jury heard testimony from John Walsh, appellant's former cell mate, that appellant was a confirmed member of the Mexican Mafia and that "[appellant] was concerned that he was going to be found guilty [of

---

[3] Jay Hart, the Regional Security Threat Group Coordinator for the Texas Department of Criminal Justice, testified that appellant received a cryptic letter in prison confirming his membership in the Mexican Mafia. The letter, which was intercepted by the police, was admitted at trial and read to the jury over appellant's running objection that references to his involvement in the Mexican Mafia were unfairly prejudicial. *See* Tex. R. Evid. 403.

the charged offense] and he wanted [M.M. and T.M.] to be killed so that they couldn't testify against him."

Based on this evidence, we conclude that the jury likely would have found that appellant committed the offense of aggravated robbery with a deadly weapon beyond a reasonable doubt even without the questionable portions of Detective Marin's testimony regarding Henry's out-of-court statements. Thus, we hold that the trial court's admission of Detective Marin's cumulative testimony regarding certain details of Henry's statements to the police—even if error—was harmless.

In his third issue, appellant contends that the trial court erred by admitting certain evidence of the convenience store robbery, including Henry's out-of-court statements to Detective Marin about the robbery, the video of the robbery taken from the convenience store, and appellant's denial of involvement during his videotaped statement to the police. He contends that the admission of this evidence violated the rules relating to extraneous offense evidence because the State offered the evidence to rebut a defensive theory of alibi raised by its own evidence, because the convenience store robbery was not proved beyond a reasonable doubt and because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The State responds that the evidence of the extraneous offense was relevant to the issue of identity and also demonstrated appellant's presence at the convenience store at a time he claimed to be in Geronimo with his girlfriend.

We review a trial court's evidentiary rulings under an abuse of discretion standard. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). The trial court is given wide latitude to admit or exclude evidence of other crimes, wrongs, or acts. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991). Therefore, as long as the trial court's ruling was within

12

"the zone of reasonable disagreement," there is no abuse of discretion, and we must uphold the ruling. *Id.* at 391.

An accused may not be tried for being a criminal generally. *Couret v. State*, 792 S.W.2d 106, 107 (Tex. Crim. App. 1990). Evidence of other crimes, wrongs, or acts is not admissible if it does nothing more than establish the bad character of an accused person in order to show action in conformity therewith. Tex. R. Evid. 404(b). However, this type of evidence may be admissible if it has relevance to a material issue in the case apart from its tendency to prove the character of the defendant. *Page v. State*, 125 S.W.3d 640, 649 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Permissible purposes for which evidence of "other crimes, wrongs or acts" may be admitted include the following: "proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident." Tex. R. Evid. 404(b) (emphasis added). Additionally, "extraneous evidence may be relevant and admissible to rebut a defensive theory." *Roberts v. State,* 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)

In the present case, appellant's defensive theories raised the issue of identity. Defense counsel's argument that M.M. and T.M. lied to the police about appellants's presence at their apartment during the robbery was an attempt to demonstrate that someone other than appellant committed the robbery. *See Robinson v. State,* No. 14-05-00334-CR, 2006 Tex. App. LEXIS 4593, at *13 (Tex. App.—Houston [14th Dist.] May 25, 2006) (stating identity was at issue when defense counsel attempted to show eyewitness's ulterior motive to lie to police about defendant's involvement in the charged offense). Additionally, during cross-examination, defense counsel questioned M.M. regarding the accuracy of her identification of appellant in the photographic line-up, placing his identity at issue. *See Carter v. State,* 145 S.W.3d 702, 709 (Tex. App.—Dallas 2004,

pet. ref'd) (noting that defense strategy aimed at undermining a witness's identification raises issue of identity). The State offered evidence of the convenience store robbery to rebut these defensive theories, contending that evidence tending to show appellant's presence at the convenience store with two individuals who committed the charged offense, Henry and Villarreal, approximately one hour prior to the charged offense, was admissible to prove appellant's identity.

Evidence of an extraneous offense is admissible to prove identity, when identity is an issue, only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. *Ransom v. State*, 503 S.W.2d 810, 812 (Tex. Crim. App. 1974). "The common distinguishing characteristic may be the proximity in time and place *or* the common mode of the commission of the offenses." *Id.* (citing *Ford v. State,* 484 S.W.2d 727, 729 (Tex. Crim. App. 1972)); *see also Lane v. State,* 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). Here, the extraneous convenience store robbery occurred approximately one hour before the charged offense. The convenience store was also located off I.H. 35 in San Marcos approximately three miles from M.M. and T.M.'s apartment. In addition to the proximity in time and place, both offenses were robberies involving appellant, Henry, and Villarreal. In light of these common distinguishing characteristics, we conclude that the evidence of the convenience store robbery was admissible to show appellant's identity as one of the three intruders who committed the charged offense.

The jury was instructed to consider the extraneous evidence of the convenience store robbery only if it found beyond a reasonable doubt that appellant committed the robbery and only for the purpose of determining appellant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in connection with the charged offense. Appellant contends that the evidence of appellant's participation in the convenience store robbery would not

14

support a jury's finding that appellant committed the offense beyond a reasonable doubt because Henry's out-of-court statements to the police concerning the convenience store robbery were not corroborated. *See Harrell v. State*, 884 S.W.2d 154, 159 (Tex. Crim. App. 1994) (holding that the standard of admissibility for extraneous offense evidence is proof beyond a reasonable doubt).

Whether corroboration is required for accomplice testimony regarding an extraneous offense offered during the guilt/innocence phase of a trial remains unclear. Under the accomplice witness rule, the *conviction* of an accused cannot rest solely on the uncorroborated testimony of an accomplice. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979) (emphasis added). In *Bustamante v. State,* 653 S.W.2d 846, 849 (Tex. App.—Corpus Christi 1982, pet. ref'd), the court held that the accomplice witness rule applies to evidence of extraneous offenses as well as to primary offenses. Since *Bustamante,* Texas courts have uniformly held that there is no corroboration requirement for evidence of extraneous offenses offered in the *punishment* phase. *See Jones v. State*, 982 S.W.2d 386, 395 (Tex. Crim. App. 1998); *Jackson v. State*, 65 S.W.3d 317, 321 (Tex. App.—Waco 2001, no pet.); *Goodman v. State*, 8 S.W.3d 362, 365 (Tex. App.—Austin 1999, no pet.); *Stevenson v. State*, 997 S.W.2d 766, 770 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

Assuming without deciding that there was a corroboration requirement for Henry's testimony concerning the extraneous convenience store robbery, we conclude that the record contains sufficient corroborating evidence. We view the corroborating evidence in the light most favorable to the verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Detective Marin's testimony concerning Henry's narrative of the events leading up to the charged offense implicated appellant in the convenience store robbery. The jury also watched appellant's videotaped statement in which the police questioned him about his "beer run" with Henry. In the video, appellant stated

"that wasn't even a robbery" and then conceded "if [the police] want to get me for beer and my picture is on it, well I am gonna take it." The jury then watched a video taken from the convenience store on April 14, 2004, at approximately 1:55 a.m., which, according to Detective Marin, depicted appellant and Henry entering the store and walking out with cases of beer. In light of this evidence, we conclude that a reasonable juror could have found that appellant committed the convenience store robbery beyond a reasonable doubt.

Appellant contends that the State cannot set up a defensive theory of alibi only to rebut its theory through the use of extraneous offense evidence. *See DeLeon v. State*, 77 S.W.3d 300, 314 (Tex. App.—Austin 2001, pet. ref'd). While we agree generally with this statement of the law, we note that if an evidentiary ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment. *Sauceda,* 129 S.W.3d at 120; *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Since we find the challenged evidence to be admissible under rule 404(b) for the purpose of establishing appellant's identity, appellant's argument regarding the State's use of strawman alibi evidence is irrelevant. *See Johnson v. State*, 68 S.W.3d 644, 650-51 (Tex. Crim. App. 2002).

Lastly, appellant challenges the evidence of the convenience store robbery on the basis of rule 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Tex. R. Evid. 403. A trial court should consider the following factors when conducting a rule 403 "balancing test": (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v.*

*State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004); *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). Almost all evidence offered by the prosecution will be prejudicial to the defendant. *DeLeon,* 77 S.W.3d at 315. Only evidence that is unfairly prejudicial should be excluded. *Id.* Unfair prejudice refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). There is a presumption that relevant evidence will be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

Under the circumstances presented here, the inherent probative value of the evidence of the convenience store robbery weighs in favor of its admission. The evidence of the convenience store robbery was relevant to refute appellant's defensive theory of misidentification. Its probative value in placing Henry and appellant together near the time of the charged offense was not substantially outweighed by the danger of unfair prejudice because it did not influence the jury to make a decision on an improper or emotional basis. Instead, the record shows that the convenience store robbery was repeatedly referred to as a "beer run" during trial. Appellant's own statement, "that wasn't even a robbery," downplays the seriousness of the act. Lastly, the challenged evidence did not overwhelm the other evidence in the record proving appellant's participation in the charged offense. Therefore, we conclude that the trial court did not abuse its discretion in overruling appellant's rule 403 objection to the evidence of the convenience store robbery.

In his fourth issue, appellant contends that the trial court erred by admitting evidence that he solicited his cellmate, John Walsh, a former member of the Aryan Brotherhood, to murder the victims of the charged offense before trial. Walsh testified that "[appellant] was concerned that he was going to be found guilty [of the charged offense] and he wanted [M.M. and T.M.] to be killed

17

so that they couldn't testify against him." He also testified that he had seen a letter to appellant from a sergeant in the Mexican Mafia "giving the green light on having [M.M. and T.M.] dusted."

Criminal acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial are admissible under Rule 404(b) as showing "consciousness of guilt." *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996). Such acts include extraneous attempts by a party to suppress the testimony of a witness. *Torres v. State*, 794 S.W.2d 596, 598-99 (Tex. App.—Austin 1990, no pet.). Evidence that appellant solicited an individual to murder two of the State's witnesses to prevent them from testifying against him at trial falls within this category.

Appellant asserts that Walsh's testimony was inadmissible because solicitation to commit murder was not proven beyond a reasonable doubt. He specifically complains that Walsh's testimony was not corroborated by other evidence in the record. He cites to section 15.03 of the penal code, which provides that "[a] person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited . . . ." Tex. Pen. Code Ann. § 15.03 (West 2003). However, we find nothing in section 15.03 that requires the State to corroborate the testimony of the person solicited in a case where the defendant is not at risk of being convicted of the solicitation offense. Indeed, the statute says that a person may not be *convicted* on uncorroborated testimony. *Id.* (emphasis added). In this case, appellant was tried and convicted for aggravated robbery with a deadly weapon. He was not tried or convicted for solicitation to commit murder. This Court has previously affirmed the admission of uncorroborated testimony from a person who was solicited by the defendant in a case where the defendant was not being tried for that specific incident of solicitation. *See Ganesan v. State,* 45 S.W.3d 197, 203 (Tex. App.—Austin

18

2001, no pet.). Therefore, Walsh's testimony did not require corroboration and was properly admitted.

Appellant also contends that Walsh's testimony was inadmissible because its probative value did not substantially outweigh the danger of unfair prejudice. *See* Tex. R. Evid. 403(b). We disagree. In *Madden v. State,* 911 S.W.2d 236, 243 (Tex. App.—Waco 1995, no pet.), the State introduced testimonial evidence of the defendant's threats to kill the police if they followed him across state lines in his trial for aggravated assault. On appeal, the defendant asserted that this evidence was improperly admitted because it was unduly prejudicial. The court acknowledged, "[w]hile it is true that making threats against the police could be considered inflammatory, this alone does not render the evidence inadmissible. It is only when the danger of unfair prejudice substantially outweighs the probative value of the evidence that it must be excluded." *Id.* The court held that evidence of the threats was relevant to show the defendant's consciousness of guilt and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *Id.*

Here, evidence that appellant solicited Walsh to murder potential witnesses is directly relevant to his consciousness of guilt. The evidence is, therefore, highly probative of appellant's involvement in the charged offense. *See Torres,* 794 S.W.2d at 598. While this evidence is undoubtedly prejudicial to appellant, we conclude that its admission did not influence the jury to make a decision on an improper or emotional basis. Therefore, the probative value of the evidence was not substantially outweighed by any danger of unfair prejudice.

In his fifth issue, appellant contends that the trial court erred by admitting evidence of his attempts to fabricate an alibi. Specifically, he contends that the four recorded phone calls to his

girlfriend from jail were inadmissible because they were offered to rebut a defensive theory raised by the State's evidence and because the evidence is unfairly prejudicial. We disagree. Criminal acts designed to reduce the likelihood of prosecution, conviction, or incarceration for the charged offense are admissible under Rule 404(b) to show "consciousness of guilt." *Ransom*, 920 S.W.2d at 299. During the recorded phone calls, appellant encourages his girlfriend to lie to the police and to take the position in the future that the police coerced her into making a statement. *See Garza v. State*, 358 S.W.2d 622, 623 (Tex. Crim. App. 1962) (efforts of an accused to induce a witness to testify falsely may be shown as indicating a consciousness of guilt). Accordingly, this evidence was admissible under rule 404(b) to show consciousness of guilt. Because this evidence was directly relevant to appellant's consciousness of guilt, the probative value of the evidence was of the highest order and was not substantially outweighed by any danger of unfair prejudice.

In his sixth and final issue, appellant contends that the trial court erred by admitting evidence of his membership in the Mexican Mafia. He contends that this evidence was unfairly prejudicial because his affiliation with the Mexican Mafia was not necessary to prove an essential element of aggravated robbery.

Evidence which demonstrates the presence of a motive on the part of the accused is admissible if it is relevant as a circumstance tending to prove the commission of the offense. *Gosch v. State*, 829 S.W.2d 775, 783 (Tex. Crim. App. 1991). Gang affiliation is relevant to show a motive for a gang-related crime. *Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002). In this case, the State put on evidence that the intruders' motive in committing the charged offense was to collect a protection tax for the Mexican Mafia. Therefore, evidence explaining the structure of the Mexican Mafia, the presence of marijuana in M.M.'s apartment, appellant's reference to a

20

"protection tax," and the membership status of appellant and his accomplices, was highly probative. Although evidence of appellant's involvement in the Mexican Mafia was undoubtedly prejudicial, it was necessary to establish the State's theory of the charged offense and helpful to the jury. Therefore, its probative value outweighed any danger of unfair prejudice.

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.

_____

G. Alan Waldrop, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed:   August 25, 2006

Do Not Publish

21