Deryl UTSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00142–CR.

Court of Appeals of Texas,
Texarkana.

Submitted April 12, 1996.

Decided April 12, 1996.

Craig L. Henry, Texarkana, for appellant.

James H. Elliott, Bowie County Assistant District Attorney, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Deryl Utsey appeals from a conviction for the offense of engaging in organized criminal activity by the unlawful delivery of a controlled substance (cocaine) in violation of the Texas Penal Code.[1] This case was consolidated for trial with the case of Frank Utsey on a similar charge. The jury convicted Deryl Utsey of engaging in unlawful criminal activity and sentenced him to confinement for twenty-five years.

Utsey contends that there was insufficient independent evidence to corroborate the testimony of the accomplice witness; that the trial court erred in overruling his objections to the admission of three bus tickets because no proper predicate was laid for introduction of the tickets into evidence, because the tickets were inadmissible hearsay, and because admission of the tickets violated his right of confrontation; that the prosecutor erred by making improper remarks to the jury during

---

**1.** The Texas Penal Code provides that a person commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or con-spires to commit one of a specified list of acts, including the unlawful delivery of a controlled substance. Tex.Penal Code Ann. § 71.02(a)(5), *amended by* Act of May 29 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3698–99.

his opening statement and during his closing argument; and that the court erred in failing to grant his motion to quash the indictment.

We first examine Utsey's contention that there was insufficient evidence to corroborate the testimony of the accomplice witness, Mildred Abraham. A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979). The corroboration is not sufficient if it merely shows the commission of the offense. *Id.*

██ To determine the sufficiency of corroboration, we must view the corroborating evidence in the light most favorable to the jury's verdict. *Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App.1994). No precise rule can be formulated as to the amount of evidence that is required to corroborate the testimony of an accomplice witness. *Id.* The corroborating evidence does not need to establish the guilt of the accused or directly connect him to the crime; it need only tend to connect the accused with the offense committed. *Jefferson v. State,* 909 S.W.2d 247 (Tex. App.—Texarkana 1995, pet. ref'd), *citing Cox v. State,* 830 S.W.2d 609, 611 (Tex.Crim.App. 1992).

██ To determine whether accomplice testimony is corroborated, we eliminate all accomplice evidence from the record. *Jefferson,* 909 S.W.2d at 252, *citing Munoz v. State,* 853 S.W.2d 558, 559 (Tex.Crim.App. 1993). If, after eliminating from consideration the testimony of the accomplice, there is inculpatory evidence that tends to connect the defendant with the commission of the offense, the testimony of the accomplice witness is corroborated sufficiently. *Perkins v. State,* 887 S.W.2d 222 (Tex.App.—Texarkana 1994, pet. ref'd), *citing Reed v. State,* 744 S.W.2d 112 (Tex.Crim.App.1988).

We will first set forth the testimony of the accomplice witness, Mildred Abraham. She testified that in January 1994 she, accompanied by Deryl Utsey, Frank Utsey, and Sandra Starling left Bowie County for Houston for the purpose of buying cocaine to bring back to Bowie County; that she and Starling

each took one of their respective children, both three years of age, with them so as to divert suspicion of the drug transaction; that Frank Utsey rented a silver Thunderbird automobile with dark windows to make the trip; that the group drove to Houston via DeKalb and Dallas and stayed overnight in a motel in Houston; that Frank Utsey left the motel the next morning and returned later, carrying a package containing cocaine worth about $25,000; that Frank Utsey divided the cocaine into two parts and placed the parts into separate bags which he wrapped tightly with freezer tape; that Frank Utsey gave one of the bags to her and the other to Sandra Starling; that each of them placed the bags inside their panties, after which the group left the motel and went to the Houston bus station in the Thunderbird rented by Frank Utsey.

Abraham further testified that when she, Deryl Utsey, Frank Utsey, Starling and the two children reached the bus station, Deryl Utsey, then wearing baggy green pants and a T-shirt, went inside the station to purchase tickets. He did not have enough money to pay for the tickets, and he returned to the Thunderbird where the rest of the group was waiting and got $10 from Frank Utsey, the driver of the Thunderbird. Deryl then went back into the bus station, bought three tickets to Texarkana, and then came back to the Thunderbird and gave the tickets to Sandra Starling. Abraham, Starling, and the two children then went to the bus, where Starling handed the tickets to the driver, who stamped the tickets and handed them back to Starling. They then boarded the bus, at which time both Abraham and Starling had the cocaine in their panties. A short time later, two police officers got on the bus and told Abraham and Starling they suspected them of carrying drugs. Abraham gave permission for one of the officers, a female, to search her. Both women were ultimately searched, and a package of cocaine was discovered and seized from the crotch area of the panties of each of the women.

██ Excluding Abraham's accomplice testimony, there was independent evidence to corroborate the testimony. Jon Ann Barton testified that in January 1994 she was a

rental agent for an automobile rental company in Texarkana, Texas; that she rented a silver Thunderbird automobile with dark-tinted windows to a person she knew to be Frank Utsey on January 10, 1994; that she retained a copy of the car rental agreement and a photocopy of Frank Utsey's driver's license used by him for identification when he rented the Thunderbird; and that the car was turned in on January 17.

One of the officers on the narcotics detail at the bus station, Officer Martin Skeen, testified that he received the bus tickets from Officer Deanie Harmon at the scene, after Officer Harmon took them from Abraham. No objection was made at trial as to the chain of custody of the tickets at the time the tickets were offered into evidence.

The State introduced into evidence a copy of the rental contract involved, signed by Frank Utsey, and a photocopy of Frank Utsey's driver's license made by the rental agency at the time Utsey rented the car.

Houston police officer Griff Maxwell testified that he was assigned to a narcotics detail in the Houston bus station on the day in question; that he observed a black male standing in line waiting to purchase a bus ticket; that when the black male reached the counter, the male talked to the ticket clerk; that the male told the clerk he had to go back outside to get ten more dollars to have enough to pay for the bus tickets he wanted to buy; that the male then walked across Main Street to a parking lot to a light-colored Thunderbird vehicle with dark-tinted windows, where he approached the driver's side; that after a few moments, the male walked back to the bus station, entered, and went back to the ticket counter; that he then had enough money to purchase what appeared to be three bus tickets; that the black male then walked out of the station to the Thunderbird; that Officer Maxwell then noticed that two females and two children were standing at the rear of the vehicle; that the black male handed the tickets to one of the females; that the black male then got into the Thunderbird and drove away; that the two females and children went into the bus station and boarded a bus; that he and a female officer then boarded the bus and detained the females; and that a subsequent search of the two females by the female officer resulted in the discovery and seizure of two bundles of cocaine found in their panties. Maxwell also testified that the black male who purchased the bus tickets was wearing baggy green pants. This evidence is circumstantial, in that Officer Maxwell could not identify at trial Deryl Utsey as the person who bought the bus tickets.

Over objection by the defendants, the State introduced the three bus tickets into evidence, two of which had the name "Utsey" typed on them, and one had the name "Deryl Utsey" on it. There was testimony that the names were entered on the tickets by the ticket agent at the time the tickets were purchased.

■ Evidence corroborating accomplice testimony may be either direct or circumstantial. *Holland v. State,* 654 S.W.2d 745 (Tex.App.—Houston [14th Dist.] 1983), *aff'd per curiam,* 653 S.W.2d 820 (Tex.Crim.App. 1983). The above enumerated independent evidence tends to connect both Frank and Deryl Utsey to the offense of organized criminal activity and is sufficient to corroborate the accomplice testimony of Mildred Abraham. This point of error is overruled.

Next, in two points of error, Utsey contends that the bus tickets were hearsay and that the court erred in admitting the tickets into evidence because no proper predicate was laid for admission of the tickets as business records.

*Hearsay* is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R.Crim.Evid. 801. A *statement* is (1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by him as a substitute for verbal expression. *Id.* A *declarant* is a person who makes a statement. *Id.* *Matter asserted* includes any matter explicitly asserted, and any matter implied by a statement, if the probative value of the statement as offered flows from the declarant's belief as to the matter. *Id.*

■ At trial, when the State sought to introduce the bus tickets into evidence, Ut-

sey objected on the ground that the tickets were hearsay for which no proper authentication had been offered that the documents were what they purported to be. The State countered that the documents were not hearsay and that its witness, Officer Skeen, had, in fact, identified the documents as photocopies of three Greyhound bus tickets which he took from Mildred Abraham at the bus station. The record reflects that he did identify the bus tickets during his testimony. Accordingly, the claim by Utsey that the documents were not properly identified or authenticated is without merit. *See* Tex. R.Crim.Evid. 901(a) (requirement for authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims).

Utsey contends that the tickets were business records that require a proper predicate before being admitted into evidence as an exception to the hearsay rule. The State did not claim that the tickets were business records, nor did it offer them into evidence as such. When Utsey objected to the admission of the tickets, the State denied that the tickets were hearsay and contended that they were admissible as statements by a coconspirator. *See* Tex.R.Crim.Evid. 801(e)(2)(E) (statement is not hearsay if the statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy). Because we will dispose of this issue as set forth below, we do not address this contention by the State.

■ The bus tickets were admissible only to show the circumstantial relationship of the parties to the scene, the contraband, or other parties. *See United States v. Marino*, 658 F.2d 1120 (6th Cir.1981). The bus tickets were not admissible without an additional predicate to show the truth of the matter stated on the tickets, to-wit: Utsey's name. When evidence is admissible for one purpose but not for another, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but in the absence of such request, the admission of such evidence shall not be a ground for complaint on appeal. Tex.R.Crim.Evid. 105(a).

No request was made and no error was preserved. This point of error is overruled.

Next, Utsey argues that admission of the tickets violated his right of confrontation. In his brief, he contends that he raised this issue at the time the tickets were offered into evidence. The record does not support this contention. The tickets were offered and accepted into evidence over Utsey's objections during the direct examination of Officer Skeen. As above noted, Utsey's objections at that time were that the tickets were inadmissible hearsay and had not been authenticated. At the time the tickets were offered and admitted into evidence, Utsey did not object on the ground that his right of confrontation would be denied if the tickets were admitted, except to the extent his right of confrontation was covered by the hearsay objection already ruled upon.

■ Hearsay evidence is inadmissible under the confrontation clause of the Sixth Amendment unless the evidence either falls within a firmly rooted hearsay exception or is supported by a particular guarantee of trustworthiness. *Tejeda v. State*, 905 S.W.2d 313, 317 (Tex.App.—San Antonio 1995, pet. ref'd), *citing Idaho v. Wright*, 497 U.S. 805, 817, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990). As earlier discussed, Utsey waived his hearsay objection, and he also waived his specific confrontation objection by failing to make such an objection when the tickets were admitted into evidence. This point of error is overruled.

Next, Utsey argues that the prosecutor made improper inflammatory remarks during opening statements. He cites the following remarks:

> And our reason for bringing you here is very plain and very simple. We don't want cocaine in your community. We don't want your kids around it, we don't want dealers having it, we don't want it for sale, we don't want people possessing it, and you shouldn't have to live with the aftermath that flows from the presence of large quantities of cocaine where you live. You shouldn't have to put up with it.
>
> We've talked about everybody's rights except y'all's. You've got a right. You've

got a right to live in a law-abiding community. You've got a right to raise your children in a law-abiding community. That's what this trial is about and we look forward to presenting the evidence to you.

At the time these remarks were made by the prosecutor, the courtroom audience included a class of high school students. Utsey made no objection at the time the remarks were made by the prosecutor. Later in the trial, on the following day, Utsey's counsel noted to the court that he had become aware that the students had been in the courtroom since the trial started, and he asked that they be removed from the courtroom because their presence might unduly prejudice the jury against the defendants. Alternatively, defense counsel indicated to the court that, if it chose not to remove the students, the prosecutor should be directed not to refer to the presence of the students during closing arguments. The court then advised counsel that he would not remove the students, but he did direct the prosecutor not to refer to the students' presence during closing arguments and comments. The court thus gave Utsey the relief he requested. The court further stated, however, that the State could talk about young people and the effect this might have on young people, but not insofar as to these particular young people.

Utsey also objects on appeal to the following statements made by the prosecutor during his rebuttal closing argument:

When you retire to that jury room to deliberate—and I'll be honest with you, I'm making a plea for law enforcement here, I'm telling you why you ought to enforce the law. You retire to that jury room to deliberate. If you care to, you can walk over and look out that window and do you know what you're going to see? The playground at the elementary school. A playground where children run and play. They can't grow up safe and they can't grow up healthy as long as people like these two individuals are making money off of cocaine. They can't do it, folks. It won't happen.

These remarks did not violate the trial court's admonition. We construe the remarks questioned by Utsey to be a plea for

law enforcement, which falls within the well-settled parameters of permissible jury argument. *See Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). This point of error is overruled.

Next, Utsey urges that the trial court erred in failing to quash his indictment in that the indictment was defective for failing to allege that he delivered a controlled substance through forgery, fraud, misrepresentation, or deception as required by Section 71.02(a)(5) of the Texas Penal Code. The amended indictment reads in relevant part as follows:

[T]hat in the County of Bowie and State of Texas that Frank Utsey, Deryl Utsey, Sandra Starling and Mildred Abraham hereinafter referred to as the Defendant heretofore on or about January 11, 1994 did unlawfully then and there with the intent to establish, maintain, or participate in a combination, conspire to commit the offense of unlawful delivery of a controlled substance, namely, cocaine, and did then and there agree with Frank Utsey, Deryl Utsey, Sandra Starling and Mildred Abraham, among themselves and with each other, to engage in conduct that would constitute said offense, to-wit: to intentionally or knowingly deliver to Mildred Abraham a controlled substance, namely cocaine of over twenty-eight grams including any adulterants or dilutants, by actually transferring said controlled substance, and in pursuant (sic) of such agreements and in furtherance thereof, the said defendants and Frank Utsey, Deryl Utsey, Sandra Starling and Mildred Abraham performed an overt act as follows, to-wit: Frank Utsey rented an automobile for the purpose of traveling to Houston, Texas to purchase cocaine; Deryl Utsey, Sandra Starling and Mildred Abraham traveled to Houston, Texas to assist Frank Utsey in transporting cocaine to Texarkana, Texas....

At the time of the offense, the Texas Penal Code provided in relevant part as follows with regard to engaging in organized criminal activity:

(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a

combination, he commits or conspires to commit one or more of the following:

. . . .

(5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug or unlawful possession of a controlled substance or dangerous drug *through forgery, fraud, misrepresentation, or deception.*

TEX.PENAL CODE ANN. § 71.02(a)(5) (emphasis added).

Utsey argues that, when read literally, Section 71.02 of the Penal Code requires the State to prove that any of the enumerated activities be done *through forgery, fraud, misrepresentation, or deception.* He further contends that, had the Legislature intended otherwise, it simply could have separated the italicized phrase from the remaining portions of subparagraph 5 by use of a semicolon or differently numbered paragraph. We disagree that the subjective self-serving construction of this statute as proposed by Utsey was intended by the Legislature. Utsey has cited no authority so construing this statute, and we are aware of none. The italicized words above apply only to the words "unlawful possession of a controlled substance or dangerous drug." *See* PAUL J. MCCLUNG, JURY CHARGES FOR TEXAS CRIMINAL PRACTICE 385 (1996) (referring to the indictment form used in *Kennard v. State,* 649 S.W.2d 752 (Tex.App.—Fort Worth 1983, pet. ref'd). This point of error is overruled.

The judgment of the trial court is affirmed.