

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00126-CR

_____


SCOTT LEE JAMES, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 25,058


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Deputy David Wilson stopped Scott Lee James' vehicle in the middle of the night for his failure to observe a stop sign. After obtaining consent to search the vehicle, Wilson found 100 clear plastic bags, a scale James claimed he used to make sure "he doesn't get ripped off," and a blue water bottle cap with a white crystalline substance. James was arrested for possession of the methamphetamine in the bottle cap. His passenger, Rhonda Snow, was also arrested on outstanding warrants. The pair was transported in the same patrol car, which Wilson searched after they were escorted to jail. To his surprise, Wilson discovered another clear plastic bag containing 12.39 grams of methamphetamine on James' side of the floorboard.

Trial to a jury led to James' conviction of possession of four or more, but less than 200, grams of methamphetamine with intent to deliver. He was sentenced to sixty-nine years' imprisonment in the Texas Department of Criminal Justice–Institutional Division.[1] James appeals his conviction by challenging the legal and factual sufficiency of the verdict. He also argues the trial court erred in failing to grant his motion to suppress the evidence and in admitting Snow's testimony and video recordings taken during the traffic stop. Because we decide the evidence was legally and factually sufficient, James waived his motion to suppress certain evidence at trial, and Snow's testimony was sufficiently corroborated, we affirm the trial court's judgment.

---

[1]James' punishment was enhanced by two previous felony convictions of possession of a controlled substance with intent to deliver and unauthorized use of a vehicle.

**I.      Sufficient Evidence Supported the Trial Court's Verdict**

**A.      Standard of Review**

We review the legal and factual sufficiency of the evidence supporting a conviction under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006).

We may find evidence factually sufficient in two ways: (1) the evidence supporting the conviction is "too weak" to support the fact-finder's verdict, or (2) considering conflicting evidence, the fact-finder's verdict is against the great weight and preponderance of the evidence.

3

*Laster*, 275 S.W.3d at 518.   In so doing, we may only find the evidence insufficient when necessary to prevent manifest injustice.   *Id.*   Although we give less deference to the verdict in a factual sufficiency review, we will not override the verdict simply because we disagree with it. *Id.*

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge.   *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

James was in possession of methamphetamine with intent to deliver as charged in the indictment if he:   (1) knowingly; (2) possessed; (3) with intent to deliver; (4) four grams or more but less than 200 grams; (5) of methamphetamine.   TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (Vernon Supp. 2009).   James' only contention is that there was insufficient evidence indicating he knowingly possessed the methamphetamine.   With the elements of the hypothetically correct jury charge in mind, we turn to the issue of sufficiency of the evidence.

**B.     The Evidence**

After James was stopped, he admitted to using methamphetamine, claimed he had none at the time, and gave Wilson consent to search the vehicle.   Wilson found approximately 100 clear plastic bags and a scale in the middle console.   James claimed the bags and said "that he just had the scale to make sure when he buys his 'stuff' that he doesn't get ripped off."   Wilson also found a blue twenty-ounce water bottle cap containing a white crystalline substance.   The cap was found

4

in the passenger seat by the seat belt latch where Snow was sitting. Officer Jason Agee arrived as backup. Snow was arrested when Wilson confirmed her outstanding warrants, and she was placed in Agee's patrol car. Wilson initially believed the cap belonged to Snow, who admitted to owning two clean hypodermic needles also found in the car. However, while James was waiting on the street during the search, he asked Wilson "can I have a drink of my water." Wilson retrieved the only bottle in the car, noted it was without a cap but had a blue label matching the cap containing methamphetamine found earlier, and confirmed the bottle belonged to James.

After *Miranda*[2] warnings, Snow told officers the methamphetamine in the bottle cap also belonged to James. The officers placed James in Agee's car with Snow while they continued searching the vehicle. Unknown to Snow and James, the officers hid a microphone in the patrol unit to record any conversation. Snow pleaded with James to tell the officers that the methamphetamine did not belong to her. Also, the following exchange was recorded:

> Snow: What are you doing? Huh-uh, don't put it in this car.

> James: Is that your purse?

> Snow: Yes. Don't put it in this car because they checked it out. Did you put it down your pants?

When separated from James, Snow told officers James had drugs in his pants. The two were transported to jail in the same car. James asked officers to retrieve a ring he had dropped while in the patrol car. Wilson went to retrieve the ring and located a clear plastic bag similar to

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

the ones of which James claimed ownership. The bag, found on James' side of the floorboard five inches from his ring, was stuffed with 12.39 grams of methamphetamine. This was "[d]efinitely dealer amount" according to Wilson. Snow claimed James dumped the bag on the floorboard.

At trial, Snow testified she had consumed some of the drug in the bottle cap with James a few hours before the stop. She told the jury that none of the methamphetamine was hers and that she had met James earlier in the day to help him sell the drugs. Snow said James had the large amount of methamphetamine with him in the car and maintained that James put it in his pants when the vehicle was pulled over. Although she did not actually see him dumping the methamphetamine on the floorboard while in the patrol car, she "heard him rustling around and . . . asked him what he was doing."

## C.   Analysis

The State was required to prove that James exercised control, custody, management, or care over the methamphetamine and that he knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. 2006); TEX. PENAL CODE ANN. § 1.07(a)(39) (Vernon Supp. 2009). By itself, mere presence at a location where drugs are found is not enough evidence to exhaust the State's burden. *Evans*, 202 S.W.3d at 162. However, presence or proximity, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care beyond a reasonable doubt if the proof amounts to more than a

strong suspicion or probability. *Id.* at 161; *Lassaint v. State*, 79 S.W.3d 736, 741 (Tex. App.—Corpus Christi 2002, no pet.).

### 1. *Knowing possession*

Since James was not in exclusive possession of the methamphetamine or the vehicle where it was found,[3] additional independent facts and circumstances must link him to the contraband "in such a way that it can be concluded that the accused had knowledge of the contraband and exercised control over it." *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). In other words, the State must establish that James' connection with the narcotics was more than just fortuitous. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). To conduct this analysis, we use the links test adopted by Texas courts to protect the innocent bystander from conviction merely because of their unfortunate proximity to someone else's drugs. *Evans*, 202 S.W.3d at 161–62. These links include:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; (14) whether the conduct of the defendant indicated a consciousness of guilt; (15) whether the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) whether the accused was observed in a suspicious area under suspicious circumstances.

---

[3]James claimed the car belonged to his fiancée.

*Id.* at 162 n.12; *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.).   This nonexhaustive list is not a litmus test, and it is the logical force of all of the evidence that guides our determination. *Olivarez*, 171 S.W.3d at 291.   In other words, the number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance.   *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

We conclude links 1, 3, 5, 6, 8, 10, 12, and 14–17 have been met.   James was present when the search was conducted.   While the large amount of methamphetamine was not in plain view, Snow testified it had been in the vehicle before the traffic stop.   Her claim that James hid the methamphetamine in his pants indicates his proximity, accessibility to the drug, and knowledge that it was contraband.   Snow testified that they both used methamphetamine a few hours before the stop, and both Wilson and Agee stated that James was fidgeting and nervous.   James incriminated himself by claiming that the water bottle was his and by admitting that he used methamphetamine and owned the bags and scale, which he used to make sure he was getting his money's worth.   Although he did not attempt to flee, Wilson testified he made a furtive gesture when he "bladed," or turned his body so the officer could only see one side while "digging at" his

8

pockets. The large "dealer" amount of methamphetamine was found in the patrol car directly in the back seat where James had dropped his ring. Finally, the pair was travelling from the high crime area of Rolling Oaks around one in the morning.

The nature of the evidence establishing links 1, 3, 5, 6, 8, 10, 12, and 14–17 raised fact questions for the jury's resolution. The jury resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences when deciding that James knowingly possessed 12.39 grams of methamphetamine. *King v. State*, 174 S.W.3d 796 (Tex. App.—Corpus Christi 2005, pet. ref'd).

### 2. *Intent to deliver*

Next, the first factor we consider when determining the issue of intent is the nature of the place where the defendant was arrested. *Bryant v. State*, 997 S.W.2d 673, 675 (Tex. App.—Texarkana 1999, no pet.). Here, James was stopped around 1:00 a.m. coming out of a high crime area. The second and third factors are the quantity of controlled substance possessed by the defendant and the manner of packaging, respectively. *Id.*; *see also Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995) (intent to deliver may be inferred from quantity of drugs possessed and from manner in which they were packaged), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997). The "definitely dealer" amount of methamphetamine was found with a scale and approximately 100 clear plastic bags. Snow stated James was going to "get rid of" or sell the methamphetamine. The fourth factor is the presence of drug paraphernalia. *Bryant*, 997 S.W.2d

9

at 675.  Snow claimed both had used discarded hypodermic needles earlier in the day and asserted ownership of two clean needles in the car.  The defendant's possession of a large amount of cash and his or her status as a drug user are the final factors.  *Id.*  Although James did not have a large amount of cash, he admitted to drug use.  Keeping in mind that the jury was the sole judge of the weight and credibility of the evidence, we find that a rational jury could have found James was in knowing possession of over four grams of methamphetamine with intent to deliver.

James' contrary evidence consists of the following observations:  (1) no methamphetamine was found on James' person; (2) Snow was also in the presence of the methamphetamine and the bottle cap was found on the passenger side of the car; (3) Snow was in the car by herself when James was initially questioned; (4) James was arrested in a traffic stop and not during a drug transaction; and (5) the drugs were packaged in one small bag.  He argues that he was not under the influence when arrested, did not attempt to flee, and did not possess a large amount of cash.  Even in reviewing the evidence in a neutral light, we do not find the jury's verdict was clearly wrong, manifestly unjust, biased, or shocking when it decided that James' connection with both amounts of methamphetamine was more than fortuitous and that James had intent to deliver.

We overrule this point of error.

**II.     James Waived His Motion to Suppress**

A motion to suppress evidence "is nothing more than a specialized objection to the admissibility of that evidence." *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). To preserve error, a defendant must also object at trial to the introduction of the offending evidence. *Ortiz v. State*, 930 S.W.2d 849, 855 (Tex. App.—Tyler 1996, no pet.) (citing *Calloway v. State*, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988)).[4]

James was pulled over by a Hunt County police officer in Hunt County for failing to stop at a sign in Van Zandt County. Contending that the officer was outside of his jurisdiction when arresting him, James filed a motion to suppress, but did not request a ruling before trial. After a jury had been chosen, James took up the suppression issue outside of its presence. Although Section 14.01 of the Texas Code of Criminal Procedure gives a peace officer authority to "arrest an offender without a warrant for any offense committed in his presence or within his view," James argued that the initial traffic stop violated Section 14.03(g) which states "[a] peace officer . . . outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, other than a violation of Subtitle C, Title 7, Transportation Code," including running a stop sign. Tex. Code Crim. Proc. Ann. art. 14.01 (Vernon 2005), art. 14.03(g) (Vernon Supp. 2009). James stated, "I understand the court's not

---

[4]The objection must also be timely. "To be timely, an objection must be raised at the earliest opportunity or as soon as the ground of objection becomes apparent." *Thomas v. State*, 884 S.W.2d 215, 216 (Tex. App.—El Paso 1994, pet. ref'd) (holding that obtaining a ruling on motion to suppress after officer has testified about the fact in front of jury does not preserve error since ruling was not timely obtained) (citing *Martinez v. State*, 867 S.W.2d 30, 35 (Tex. Crim. App. 1993)).

11

making a ruling one way or the other until you hear more evidence, I guess, but is the – my motion to suppress – I'm not asking you to rule on it right now.   I'm asking the court how they want to – how you want to handle it."   After the conclusion of further argument, the trial court stated, "Okay.   Well I'll take it under advisement and watch the testimony."

The State called Wilson, who testified about the facts of the traffic stop and the evidence recovered in front of the jury.   At the conclusion of his testimony, James asked the trial court, "Just for the record the court's denying the motion to suppress[?]"   The judge said, "Sure." During the remainder of the trial, the State introduced the 12.39 grams of methamphetamine, the bottle cap containing methamphetamine, the laboratory reports, the clear plastic bags, and the scale.   James affirmatively stated he had no objection to all of these evidentiary items.

Generally, when a pretrial motion to suppress evidence is overruled, a defendant need not object at trial in order to preserve the error on appeal.   *Klapesky v. State*, 256 S.W.3d 442, 449 (Tex. App.—Austin 2008, pet. ref'd); *Graham v. State*, 96 S.W.3d 658, 659 (Tex. App.—Texarkana 2003, pet. ref'd).   However, when the evidence is offered during trial and defense counsel affirmatively represents the defendant has "no objection" to the evidence, any alleged error in its admission is waived, even if the error had been previously preserved by a motion to suppress and an adverse ruling.   *Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); *Graham*, 96 S.W.3d at 660.   Citing *Moody*, this Court has stated, "Even after vigorously objecting to specific evidence, when the evidence is actually offered into evidence and counsel

states, 'No objection,' this waives the challenge of the admissibility of the challenged evidence." *Rogers v. State*, No. 06-05-00083-CR, 2006 WL 1788196, at *1 (Tex. App.—Texarkana June 30, 2006, pet. ref'd) (mem. op., not designated for publication) (citing *Moody*, 827 S.W.2d 889); *Sands v. State*, 64 S.W.3d 488, 491 (Tex. App.—Texarkana 2001, no pet.).

James' affirmative representation that he had no objection to the admission of these evidentiary items resulted in a waiver of his motion to suppress these items. Therefore, we need not address the main contention contained within his motion to suppress. This point of error is overruled.

**III.    Trial Court Did Not Err in Admitting Audio Portions of Arrest Video**

James filed a separate motion to suppress audio portions of the in-car recording of the arrest. We review a trial court's admission of evidence for abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement. *McCarty*, 257 S.W.3d at 239 (citing *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)). Unless there is clear abuse of the trial court's discretion, its ruling will not be reversed. *Id.*

James argues the trial court erred by admitting two video recordings made during his arrest on the basis that they contained hearsay statements and their probative value was substantially outweighed by the danger of unfair prejudice. He complains of the quality of the audio recording

13

in the first video from Wilson's car, which was played without sound for the jury. Our review of the video simply shows Wilson stopping James, making contact with Agee, questioning James and Snow, and cuffing and placing them in the back of the patrol car at different times. We fail to find, and James does not elaborate in his brief, how this video is unfairly prejudicial or contained statements offered for the truth of the matter asserted.

The second video from Agee's car was played for the jury with sound. To preserve error, a defendant must raise his or her complaint in a specific manner. TEX. R. APP. P. 33.1. James does not highlight for the Court which statements contained hearsay or were unfairly prejudicial. His "conclusory objection to the entire audio portion was not specific, and is inadequate to preserve this error for appeal." *Riley v. State*, 988 S.W.2d 895, 898 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "When an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the exact objection." *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). "The trial court is not required to sort through challenged evidence to segregate the admissible from the inadmissible." *Ross v. State*, 154 S.W.3d 804, 813 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (finding general Rule 403 objection to taped interviews insufficient to preserve error). Because the hour long video included both admissible, and arguably inadmissible evidence, we conclude James failed to preserve this point of error due to his conclusory, nonspecific objections.

14

Nevertheless, we also point out that the videos were played for the jury after the conclusion of all testimony. Of interest in the second video are statements by Snow indicating the methamphetamine is not hers, James' statement that he dropped his ring and is afraid to pick it up, and Snow's question "What are you doing" and advice not to "put it in this car." The video also includes images of the officers' search. Before the video was shown to the jury, the officers testified without objection to the facts of the arrest and described the information depicted by the video. Specifically, Wilson and Agee testified that either James or that Snow said the methamphetamine was not Snow's, that James dropped his ring and asked the officers to pick it up, and Snow testified she asked James what he was doing after she saw him "rustling around."[5] Even had James preserved his hearsay arguments, if the facts to which the statements related were "sufficiently proved by other competent and unobjected to evidence, as in the instant case, the admission of the hearsay [was] properly deemed harmless and does not constitute reversible error." *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986); *Land v. State*, 291 S.W.3d 23, 28 (Tex. App.—Texarkana 2009, pet. ref'd) (admission of inadmissible evidence harmless where it "comes in elsewhere without objection") (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999)).

## IV. Snow's Testimony Was Sufficiently Corroborated

Finally, James complains that Snow's testimony was not sufficiently corroborated. Corroborating evidence need not establish James' guilt or directly connect him to the crime.

---

[5]Wilson's offense report stated Snow "knew he had it and that he told her he dumped it on the floor board in the car."

15

*Utsey v. State*, 921 S.W.2d 451, 453 (Tex. App.—Texarkana 1996, pet. ref'd). However, the jury was not free to convict James solely on Snow's testimony unless it was "corroborated by other evidence tending to connect [him] with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005); *Utsey*, 921 S.W.2d at 453. James admitted to ownership of the bags and scale, which he used to make sure he was getting his money's worth when purchasing drugs. Wilson also believed James told him the methamphetamine in the bottle cap did not belong to Snow. The officer testified James was nervously "digging at" something in his pockets while being frisked. The large bag of methamphetamine was found on James' side of the patrol car five inches from his ring. This is evidence that when viewed in the light most favorable to the jury's verdict, tends to connect James with the methamphetamine. *Utsey*, 921 S.W.2d at 453. Since inculpatory evidence linking James to the offense exists subsequent to removal of Snow's testimony from the record, the accomplice testimony was sufficiently corroborated. *See id.*; *Jeffery v. State*, 169 S.W.3d 439, 448 (Tex. App.—Texarkana 2005, pet. ref'd) (scales, ledger, and other items found in residence corroborated accomplice's testimony regarding intent to deliver); *Stubblefield v. State*, 79 S.W.3d 171, 176 (Tex. App.—Texarkana 2002, pet. ref'd) (holding analysis of links test without accomplice testimony sufficient for purpose of corroboration).

We overrule James' final point of error.

## V.     Conclusion

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     April 14, 2010
Date Decided:       April 23, 2010

Do Not Publish