In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00126-CR

                                                ______________________________

 

 

                                        SCOTT LEE
JAMES, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 25,058

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Deputy
David Wilson stopped Scott Lee James’ vehicle in the middle of the night for
his failure to observe a stop sign. 
After obtaining consent to search the vehicle, Wilson found 100 clear
plastic bags, a scale James claimed he used to make sure “he doesn’t get ripped
off,” and a blue water bottle cap with a white crystalline substance.  James was arrested for possession of the
methamphetamine in the bottle cap.  His
passenger, Rhonda Snow, was also arrested on outstanding warrants.  The pair was transported in the same patrol
car, which Wilson searched after they were escorted to jail.  To his surprise, Wilson discovered another
clear plastic bag containing 12.39 grams of methamphetamine on James’ side of
the floorboard.  

            Trial
to a jury led to James’ conviction of possession of four or more, but less than
200, grams of methamphetamine with intent to deliver.  He was sentenced to sixty-nine years’
imprisonment in the Texas Department of Criminal Justice–Institutional
Division.[1]  James appeals his conviction by challenging
the legal and factual sufficiency of the verdict.  He also argues the trial court erred in
failing to grant his motion to suppress the evidence and in admitting Snow’s
testimony and video recordings taken during the traffic stop.  Because we decide the evidence was legally
and factually sufficient, James waived his motion to suppress certain evidence
at trial, and Snow’s testimony was sufficiently corroborated, we affirm the
trial court’s judgment. 

I.          Sufficient Evidence
Supported the Trial Court’s Verdict 

            A.        Standard of Review  

            We
review the legal and factual sufficiency of the evidence supporting a
conviction under well-established standards. 
In conducting a legal sufficiency review, we consider the evidence in
the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  We must give deference to “the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate
facts.”  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318–19
(1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution.  State
v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  In conducting a factual sufficiency review,
we consider the evidence in a neutral light. 
Watson v. State, 204 S.W.3d
404, 414–15 (Tex. Crim. App. 2006).

            We
may find evidence factually sufficient in two ways:  (1) the evidence supporting the conviction is
“too weak” to support the fact-finder’s verdict, or (2) considering conflicting
evidence, the fact-finder’s verdict is against the great weight and
preponderance of the evidence.  Laster, 275 S.W.3d at 518.  In so doing, we may only find the evidence
insufficient when necessary to prevent manifest injustice.  Id.  Although we give less deference to the
verdict in a factual sufficiency review, we will not override the verdict
simply because we disagree with it.  Id.

            Both
legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App.
2008).

            James was in possession of
methamphetamine with intent to deliver as charged in the indictment if he:  (1) knowingly; (2) possessed; (3) with intent
to deliver; (4) four grams or more but less than 200 grams; (5) of methamphetamine.  Tex.
Health & Safety Code Ann. § 481.112(a), (d) (Vernon Supp. 2009).  James’ only contention is that there was
insufficient evidence indicating he knowingly possessed the
methamphetamine.  With the elements of
the hypothetically correct jury charge in mind, we turn to the issue of
sufficiency of the evidence. 

            B.        The Evidence

            After James was
stopped, he admitted to using methamphetamine, claimed he had none at the time,
and gave Wilson consent to search the vehicle.  Wilson found approximately 100 clear plastic
bags and a scale in the middle console. 
James claimed the bags and said “that he just had the scale to make sure
when he buys his ‘stuff’ that he doesn’t get ripped off.”  Wilson also found a blue twenty-ounce water
bottle cap containing a white crystalline substance.  The cap was found in the passenger seat by
the seat belt latch where Snow was sitting. 
Officer Jason Agee arrived as backup. 
Snow was arrested when Wilson confirmed her outstanding warrants, and
she was placed in Agee’s patrol car. 
Wilson initially believed the cap belonged to Snow, who admitted to
owning two clean hypodermic needles also found in the car.  However, while James was waiting on the
street during the search, he asked Wilson “can I have a drink of my water.”  Wilson retrieved the only bottle in the car,
noted it was without a cap but had a blue label matching the cap containing
methamphetamine found earlier, and confirmed the bottle belonged to James.  

            After
Miranda[2]
warnings, Snow told officers the methamphetamine in the bottle cap also
belonged to James.  The officers placed
James in Agee’s car with Snow while they continued searching the vehicle.  Unknown to Snow and James, the officers hid a
microphone in the patrol unit to record any conversation.  Snow pleaded with James to tell the officers
that the methamphetamine did not belong to her. 
Also, the following exchange was recorded:

            Snow:  What are you doing?  Huh-uh, don’t put it in this car. 

 

            James:
 Is that your purse?

 

            Snow:  Yes. 
Don’t put it in this car because they checked it out.  Did you put it down your pants?

 

            When
separated from James, Snow told officers James had drugs in his pants.  The two were transported to jail in the same
car.  James asked officers to retrieve a
ring he had dropped while in the patrol car. 
Wilson went to retrieve the ring and located a clear plastic bag similar
to the ones of which James claimed ownership. 
The bag, found on James’ side of the floorboard five inches from his
ring, was stuffed with 12.39 grams of methamphetamine.  This was “[d]efinitely dealer amount”
according to Wilson.  Snow claimed James
dumped the bag on the floorboard.  

            At
trial, Snow testified she had consumed some of the drug in the bottle cap with
James a few hours before the stop.  She
told the jury that none of the methamphetamine was hers and that she had met
James earlier in the day to help him sell the drugs.  Snow said James had the large amount of
methamphetamine with him in the car and maintained that James put it in his
pants when the vehicle was pulled over. 
Although she did not actually see him dumping the methamphetamine on the
floorboard while in the patrol car, she “heard him rustling around and
. . . asked him what he was doing.” 


            C.        Analysis 

            The State was required to
prove that James exercised control, custody, management, or care over the
methamphetamine and that he knew the matter possessed was contraband.  Evans v. State, 202 S.W.3d 158, 161 (Tex. 2006); Tex. Penal Code Ann. § 1.07(a)(39)
(Vernon Supp. 2009).  By itself, mere
presence at a location where drugs are found is not enough evidence to exhaust
the State’s burden.  Evans, 202 S.W.3d at 162.  However, presence or proximity, when combined
with other direct or circumstantial evidence, may be sufficient to establish
control, management, custody, or care beyond a reasonable doubt if the proof
amounts to more than a strong suspicion or probability.  Id. at 161; Lassaint v. State, 79 S.W.3d 736, 741 (Tex.
App.—Corpus Christi 2002, no pet.).

                        1.         Knowing possession

            Since
James was not in exclusive possession of the methamphetamine or the vehicle
where it was found,[3]
additional independent facts and circumstances must link him to the contraband “in
such a way that it can be concluded that the accused had knowledge of the
contraband and exercised control over it.” 
Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d).  In other
words, the State must establish that James’ connection with the narcotics was
more than just fortuitous.  Poindexter
v. State, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).  To conduct this analysis, we use the links
test adopted by Texas courts to protect the innocent bystander from conviction
merely because of their unfortunate proximity to someone else’s drugs.  Evans, 202 S.W.3d at 161–62. 
These links include: 

(1) the defendant’s presence when a search is
conducted; (2) whether the contraband was in plain view; (3) the defendant’s
proximity to and the accessibility of the narcotics; (4) whether the defendant
was under the influence of narcotics when arrested; (5) whether the defendant
possessed other contraband or narcotics when arrested; (6) whether the
defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or
drug paraphernalia were present; (11) whether the defendant owned or had the
right to possess the place where the drugs were found; (12) whether the
place where the drugs were found was enclosed; (13) whether the defendant
was found with a large amount of cash; (14) whether the conduct of the
defendant indicated a consciousness of guilt; (15) whether the accused
made incriminating statements connecting himself or herself to the contraband;
(16) the quantity of the contraband; and (17) whether the accused was observed
in a suspicious area under suspicious circumstances. 

 

Id. at 162 n.12; Muckleroy
v. State, 206 S.W.3d
746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref’d); Olivarez v. State, 171 S.W.3d 283, 291 (Tex.
App.—Houston [14th Dist.] 2005, no pet.); Kyte v. State, 944 S.W.2d 29, 31 (Tex.
App.—Texarkana 1997, no pet.).  This
nonexhaustive list is not a litmus test, and it is the logical force of all of
the evidence that guides our determination. 
Olivarez, 171
S.W.3d at 291.  In other words, the
number of links present is not as important as the degree to which they tend to
link the defendant to the controlled substance. 
Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no
pet.); Williams v. State, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet.
ref’d); Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991,
pet. ref’d).

            We conclude links 1, 3, 5, 6, 8, 10, 12, and
14–17 have been met.  James was present
when the search was conducted.  While the
large amount of methamphetamine was not in plain view, Snow testified it had
been in the vehicle before the traffic stop. 
Her claim that James hid the methamphetamine in his pants indicates his
proximity, accessibility to the drug, and knowledge that it was
contraband.  Snow testified that they
both used methamphetamine a few hours before the stop, and both Wilson and Agee
stated that James was fidgeting and nervous. 
James incriminated himself by claiming that the water bottle was his and
by admitting that he used methamphetamine and owned the bags and scale, which
he used to make sure he was getting his money’s worth.  Although he did not attempt to flee, Wilson
testified he made a furtive gesture when he “bladed,” or turned his body so the
officer could only see one side while “digging at” his pockets.  The large “dealer” amount of methamphetamine
was found in the patrol car directly in the back seat where James had dropped
his ring.  Finally, the pair was
travelling from the high crime area of Rolling Oaks around one in the
morning.  

            The nature of the evidence
establishing links 1, 3, 5, 6,
8, 10, 12, and 14–17 raised fact questions for the jury’s
resolution.  The jury resolved conflicts
in the testimony, weighed the evidence, and drew reasonable inferences when
deciding that James knowingly possessed 12.39 grams of methamphetamine.  King v. State, 174 S.W.3d 796 (Tex.
App.—Corpus Christi 2005, pet. ref’d).   

                        2.         Intent to deliver

            Next,
the first factor we consider when determining the issue of intent is the nature
of the place where the defendant was arrested. 
Bryant v. State, 997 S.W.2d
673, 675 (Tex. App.—Texarkana 1999, no pet.). 
Here, James was stopped around 1:00 a.m. coming out of a high crime
area.  The second and third factors are
the quantity of controlled substance possessed by the defendant and the manner
of packaging, respectively.  Id.; see also Rhodes v. State,
913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995) (intent to deliver may be
inferred from quantity of drugs possessed and from manner in which they were
packaged), aff’d, 945 S.W.2d 115
(Tex. Crim. App. 1997).  The “definitely
dealer” amount of methamphetamine was found with a scale and approximately 100
clear plastic bags.  Snow stated James
was going to “get rid of” or sell the methamphetamine.  The fourth factor is the presence of drug
paraphernalia.  Bryant, 997 S.W.2d at 675.  Snow claimed both had used discarded
hypodermic needles earlier in the day and asserted ownership of two clean
needles in the car.  The defendant’s
possession of a large amount of cash and his or her status as a drug user are
the final factors.  Id.  Although James did not
have a large amount of cash, he admitted to drug use.  Keeping in mind that the jury was the sole
judge of the weight and credibility of the evidence, we find that a rational
jury could have found James was in knowing possession of over four grams of
methamphetamine with intent to deliver.  

            James’
contrary evidence consists of the following observations:  (1) no methamphetamine was found on James’
person; (2) Snow was also in the presence of the methamphetamine and the bottle
cap was found on the passenger side of the car; (3) Snow was in the car by
herself when James was initially questioned; (4) James was arrested in a
traffic stop and not during a drug transaction; and (5) the drugs were packaged
in one small bag.  He argues that he was
not under the influence when arrested, did not attempt to flee, and did not possess
a large amount of cash.  Even in
reviewing the evidence in a neutral light, we do not find the jury’s verdict
was clearly wrong, manifestly unjust, biased, or shocking when it decided that James’
connection with both amounts of methamphetamine was more than fortuitous and
that James had intent to deliver.  

            We
overrule this point of error.  

II.       James
Waived His Motion to Suppress  

            A
motion to suppress evidence “is nothing more than a specialized objection to
the admissibility of that evidence.”  Galitz v. State, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981).  To preserve error, a defendant must also
object at trial to the introduction of the offending evidence.  Ortiz
v. State, 930 S.W.2d 849, 855 (Tex. App.—Tyler 1996, no pet.) (citing Calloway v. State, 743 S.W.2d 645, 650
(Tex. Crim. App. 1988)).[4]  

            James
was pulled over by a Hunt County police officer in Hunt County for failing to
stop at a sign in Van Zandt County. 
Contending that the officer was outside of his jurisdiction when
arresting him, James filed a motion to suppress, but did not request a ruling
before trial.  After a jury had been
chosen, James took up the suppression issue outside of its presence.  Although Section 14.01 of the Texas Code of
Criminal Procedure gives a peace officer authority to “arrest an offender
without a warrant for any offense committed in his presence or within his view,”
James argued that the initial traffic stop violated Section 14.03(g) which
states “[a] peace officer . . . outside of the officer’s jurisdiction may
arrest without a warrant a person who commits any offense within the officer’s
presence or view, other than a violation of Subtitle C, Title 7,
Transportation Code,” including running a stop sign.  Tex.
Code Crim. Proc. Ann. art. 14.01 (Vernon 2005), art. 14.03(g) (Vernon Supp.
2009).  James stated, “I understand the
court’s not making a ruling one way or the other until you hear more evidence,
I guess, but is the – my motion to suppress – I’m not asking you to rule on it
right now.  I’m asking the court how they
want to – how you want to handle it.” 
After the conclusion of further argument, the trial court stated, “Okay.  Well I’ll take it under advisement and watch
the testimony.”  

            The
State called Wilson, who testified about the facts of the traffic stop and the
evidence recovered in front of the jury. 
At the conclusion of his testimony, James asked the trial court, “Just
for the record the court’s denying the motion to suppress[?]”  The judge said, “Sure.”  During the remainder of the trial, the State
introduced the 12.39 grams of methamphetamine, the bottle cap containing
methamphetamine, the laboratory reports, the clear plastic bags, and the
scale.  James affirmatively stated he had
no objection to all of these evidentiary items. 


            Generally,
when a pretrial motion to suppress evidence is overruled, a defendant need not
object at trial in order to preserve the error on appeal.  Klapesky
v. State, 256 S.W.3d 442, 449 (Tex. App.—Austin 2008, pet. ref’d); Graham v. State, 96 S.W.3d 658, 659
(Tex. App.—Texarkana 2003, pet. ref’d). 
However, when the evidence is offered during trial and defense counsel
affirmatively represents the defendant has “no objection” to the evidence, any
alleged error in its admission is waived, even if the error had been previously
preserved by a motion to suppress and an adverse ruling.  Moody v.
State, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); Graham, 96 S.W.3d at 660. 
Citing Moody, this Court has
stated, “Even after vigorously objecting to specific evidence, when the
evidence is actually offered into evidence and counsel states, ‘No objection,’
this waives the challenge of the admissibility of the challenged evidence.”  Rogers
v. State, No. 06-05-00083-CR, 2006 WL 1788196, at *1 (Tex. App.—Texarkana June
30, 2006, pet. ref’d) (mem. op., not designated for publication) (citing Moody, 827 S.W.2d 889); Sands v. State, 64 S.W.3d 488, 491 (Tex.
App.—Texarkana 2001, no pet.).

            James’
affirmative representation that he had no objection to the admission of these
evidentiary items resulted in a waiver of his motion to suppress these
items.  Therefore, we need not address
the main contention contained within his motion to suppress.  This point of error is overruled.  

III.       Trial Court Did Not Err
in Admitting Audio Portions of Arrest Video

            James
filed a separate motion to suppress audio portions of the in-car recording of
the arrest.  We review a trial court’s
admission of evidence for abuse of discretion. 
McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); Casey
v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  A trial court abuses its discretion if its
decision is outside the zone of reasonable disagreement.  McCarty, 257 S.W.3d at 239 (citing Cantu v. State, 842 S.W.2d 667,
682 (Tex. Crim. App. 1992)).  Unless
there is clear abuse of the trial court’s discretion, its ruling will not be
reversed.  Id.  

            James argues
the trial court erred by admitting two video recordings made during his arrest
on the basis that they contained hearsay statements and their probative value
was substantially outweighed by the danger of unfair prejudice.  He complains of the quality of the audio
recording in the first video from Wilson’s car, which was played without sound
for the jury.  Our review of the video
simply shows Wilson stopping James, making contact with Agee, questioning James
and Snow, and cuffing and placing them in the back of the patrol car at
different times.  We fail to find, and
James does not elaborate in his brief, how this video is unfairly prejudicial
or contained statements offered for the truth of the matter asserted.  

            The second video from
Agee’s car was played for the jury with sound. 
To preserve error, a defendant must raise his or her complaint in a
specific manner.  Tex. R. App. P. 33.1. 
James does not highlight for the Court which statements contained
hearsay or were unfairly prejudicial.  His
“conclusory objection to the entire audio portion was not specific, and is
inadequate to preserve this error for appeal.” 
Riley v. State, 988 S.W.2d 895, 898 (Tex. App.—Houston [14th
Dist.] 1999, no pet.).  “When an exhibit
contains both admissible and inadmissible evidence, the objection must
specifically refer to the challenged material to apprise the trial court of the
exact objection.”  Sonnier v. State,
913 S.W.2d 511, 518 (Tex. Crim. App. 1995). 
“The trial court is not required to sort through challenged evidence to
segregate the admissible from the inadmissible.”  Ross v. State, 154 S.W.3d 804, 813
(Tex. App.—Houston [14th Dist.] 2004, pet. ref’d) (finding general Rule 403
objection to taped interviews insufficient to preserve error).  Because the hour long video included both
admissible, and arguably inadmissible evidence, we conclude James failed to
preserve this point of error due to his conclusory, nonspecific objections. 

            Nevertheless, we also
point out that the videos were played for the jury after the conclusion of all
testimony.  Of interest in the second
video are statements by Snow indicating the methamphetamine is not hers, James’
statement that he dropped his ring and is afraid to pick it up, and Snow’s
question “What are you doing” and advice not to “put it in this car.”  The video also includes images of the
officers’ search.  Before the video was
shown to the jury, the officers testified without objection to the facts of the
arrest and described the information depicted by the video.  Specifically, Wilson and Agee testified that
either James or that Snow said the methamphetamine was not Snow’s, that James
dropped his ring and asked the officers to pick it up, and Snow testified she
asked James what he was doing after she saw him “rustling around.”[5]  Even had James preserved his hearsay
arguments, if the facts to which the statements related were “sufficiently
proved by other competent and unobjected to evidence, as in the instant case,
the admission of the hearsay [was] properly deemed harmless and does not
constitute reversible error.”  Anderson
v. State, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986); Land v. State,
291 S.W.3d 23, 28 (Tex. App.—Texarkana 2009, pet. ref’d) (admission of
inadmissible evidence harmless where it “comes in elsewhere without objection”)
(citing Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999)).  

IV.       Snow’s Testimony Was
Sufficiently Corroborated 

            Finally,
James complains that Snow’s testimony was not sufficiently corroborated.  Corroborating evidence need not establish
James’ guilt or directly connect him to the crime.  Utsey
v. State, 921 S.W.2d 451, 453 (Tex. App.—Texarkana 1996, pet. ref’d).  However, the jury was not free to convict
James solely on Snow’s testimony unless it was “corroborated by other evidence
tending to connect [him] with the offense committed.”  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); Utsey, 921 S.W.2d at 453. 
James admitted to ownership of the bags and scale, which he used to make
sure he was getting his money’s worth when purchasing drugs.  Wilson also believed James told him the
methamphetamine in the bottle cap did not belong to Snow.  The officer testified James was nervously “digging
at” something in his pockets while being frisked.  The large bag of methamphetamine was found on
James’ side of the patrol car five inches from his ring.  This is evidence that when viewed in the
light most favorable to the jury’s verdict, tends to connect James with the
methamphetamine.  Utsey, 921 S.W.2d at 453.  Since inculpatory evidence linking James
to the offense exists subsequent to removal of Snow’s testimony from the
record, the accomplice testimony was sufficiently corroborated.  See
id.; Jeffery v. State, 169 S.W.3d 439, 448 (Tex. App.—Texarkana 2005,
pet. ref’d) (scales, ledger, and other items found in residence corroborated
accomplice’s testimony regarding intent to deliver); Stubblefield v. State, 79 S.W.3d 171, 176 (Tex. App.—Texarkana
2002, pet. ref’d) (holding analysis of links test without accomplice testimony
sufficient for purpose of corroboration). 


            We
overrule James’ final point of error. 

V.        Conclusion


            We
affirm the judgment of the trial court. 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          April 14, 2010

Date Decided:             April 23, 2010

 

Do Not Publish











[1]James’
punishment was enhanced by two previous felony convictions of possession of a controlled
substance with intent to deliver and unauthorized use of a vehicle.  

 





[2]Miranda v. Arizona, 384 U.S. 436 (1966).

 





[3]James
claimed the car belonged to his fiancée. 






[4]The
objection must also be timely.  “To be
timely, an objection must be raised at the earliest opportunity or as soon as
the ground of objection becomes apparent.” 
Thomas v. State, 884 S.W.2d 215, 216 (Tex. App.—El Paso
1994, pet. ref’d) (holding that
obtaining a ruling on motion to suppress after officer has testified about the
fact in front of jury does not preserve error since ruling was not timely
obtained) (citing Martinez v. State,
867 S.W.2d 30, 35 (Tex. Crim. App. 1993)).





[5]Wilson’s offense report stated Snow “knew he
had it and that he told her he dumped it on the floor board in the car.”